# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

JUAN AGUIRRE,

　　　　　Petitioner,

　　v.

JOHN MATTOS, *et al.*,

　　　　　Respondents.

Case No. 2:26-cv-00785-RFB-NJK

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Juan Aguirre's First Amended Petition (ECF No. 6) [hereinafter, "Petition"]. Through his petition and subsequent pleadings, Petitioner asserts that his continued civil detention in Respondents' custody is statutorily barred under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1254a(d)(4). For the foregoing reasons, the Court grants Mr. Aguirre's Petition, ordering his immediate release.

## I.    JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus in the immigration context to noncitizens who are being detained "in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curiam) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention . . . ."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Respondents incorporate by reference their prior argument that the jurisdiction-stripping provisions of the INA set forth in 8 U.S.C. § 1252 bar this Court from entertaining the Petition. See ECF No. 8-3 at 22–26 (Federal Respondents' Return in Jacobo Ramirez v. Mullin, Case No. 2:25-cv-02136-RFB-MDC (D. Nev. Oct. 30, 2025)). However, as this Court has held repeatedly, those arguments are in error and misplaced where a noncitizen challenges the lawfulness of their detention; the Court incorporates its prior findings and reasoning on this issue by reference herein. See Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1141–1143 (D. Nev. 2025); cf. also Lopez-Marroquin, 955 F.3d at 759. The Court thus retains jurisdiction to consider this matter pursuant to its habeas authority under 28 U.S.C. § 2241.

## II.    STATUTORY SCHEME

By way of background, the INA provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Specifically, four statutes empower the government "to detain non-citizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). A non-citizen's place within this web of statutes is significant as it "can affect whether [their] detention is mandatory or discretionary, as well as the kind of review process available to [them] if [they] wish[ ] to" challenge their detention. See id. (citation omitted). In the instant case, Respondents exclusively invoke § 1225(b)(2) to justify Petitioner's detention and support their claim that his detention is mandatory in nature. See generally ECF No. 8 [hereinafter, "Opposition"].

For context, the INA imposes mandatory detention of certain noncitizens *seeking to enter the country* under 8 U.S.C. § 1225. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). While "§ 1226 applies to [noncitizens] already present in the United States," the INA "authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)." Id. at 303 (emphasis added). While Section § 1226's detention scheme[1] serves as the "default rule" governing the "process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," § 1225(b) has been characterized by the Ninth Circuit as "supplement[ing] § 1226's detention scheme." Id. at 288; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022). Under § 1225, a noncitizen "who *has not been admitted* or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1) (emphasis added). For certain "applicants for admission," § 1225 authorizes "expedited removal." § 1225(b)(1). "All other applicants for admission are covered by § 1225(b)(2), which 'serves as a catchall provision,' and which mandates detention 'if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted.'" Id. (first citing Jennings, 583 U.S. at 287, then quoting U.S.C. § 1225(b)(2)(A)). Thus, noncitizens subject to § 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their standard removal proceedings under § 1229a are pending.

However, other provisions of the INA impose statutory bars to detention for specific categories of noncitizens. As is relevant here, 8 U.S.C. § 1254a, *i.e.*, the Temporary Protected Status ("TPS") statute, provides humanitarian relief to nationals of certain countries—based upon specific country conditions findings—and permits qualifying noncitizens to apply for protection from removal and work authorization. 8 U.S.C. §§ 1254a(a)(1)(A)–(B); see also Nat'l TPS Alliance v. Noem, 166 F.4th 739, 749–50, 754–55 (9th Cir. 2026) (setting forth a brief history of TPS and explaining the statute's structure). "[A] TPS recipient is 'considered as being in, and maintaining, lawful status as a nonimmigrant' for the purpose of becoming [a legal permanent

---

[1] The Court incorporates by reference its prior orders setting forth the legal background for 8 U.S.C. § 1226 herein. See Jacobo Ramirez v. Mullin, Case No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *5–7 (D. Nev. Mar. 30, 2026).

- 3 -

resident]." Sanchez v. Mayorkas, 593 U.S. 409, 412 (2021) (quoting 8 U.S.C. § 1254a(f)(4)). Moreover, the statute explicitly states that relevant authorities "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A). In addition, noncitizens who have been granted TPS by the government "shall not be detained by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." 8 U.S.C. § 1254a(d)(4). USCIS may withdraw status of an individual granted TPS under specific conditions set forth in the statute's implementing regulations. See 8 C.F.R. § 244.14(a). The decision by USCIS to withdraw an individual's TPS status must be, *inter alia*, in writing and served by personal service pursuant to 8 C.F.R. § 103.8(a)(2). 8 C.F.R. §§ 244.14(b)(1), (b)(3).

## III.    DISCUSSION[2]

Petitioner asserts that he cannot be detained under 8 U.S.C. § 1225(b)(2)(A), nor under any detention scheme on the basis of his immigration status in the United States, because he has a valid grant of TPS. Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to contend that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) for entering the U.S. without admission or parole and without inspection. See Opposition at 1–2. Respondents do not so much as mention TPS, nor the TPS statute, beyond to indicate that "USCIS closed Petitioner's Application for Temporary Protected Status" on April 2, 2024. Id. at 2.

This Court is well acquainted with Respondents' novel interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). However, Respondents' interpretation is doubly incorrect in the instant case, because even Respondents' own interpretation of § 1225(b)(2)(A) cannot justify the detention of an individual with TPS.

Respondents do not refute the following assertions of fact by Petitioner: (1) Mr. Aguirre

---

[2] The Court's determinations are predicated upon the Parties' factual allegations and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

entered the United States in 1989 after leaving his native country of El Salvador;[3] (2) he was repeatedly granted employment authorization under 8 C.F.R. § 274a.12(a)(12), which only applies to individuals with approved TPS applications;[4] (3) he was granted TPS in or around 2001;[5] and (4) TPS for El Salvador remains valid until, at least, September 9, 2026. See Petition at 1–2; ECF No. 9-1 (Mr. Aguirre's Employment Authorization Cards). Respondents only provide a single line of argument pertaining to Petitioner's TPS status: "USCIS closed Petitioner's Application for Temporary Protected Status" on April 2, 2024. See Opposition at 2. Neither party has produced evidence showing that Petitioner's TPS has been withdrawn, and Petitioner indicates that he has received no notice if the government has withdrawn his TPS. See Petition at 2.

The Court finds Federal Respondents must necessarily possess the documents indicating Petitioner's status or lack thereof under 8 U.S.C. § 1254a(d) and 8 C.F.R. § 244.14. However, Federal Respondents have failed to produce such evidence, despite this Court ordering Respondents "produce documents reflecting the basis for their detention of Petitioner." See ECF No. 3 (Order to Show Cause). Respondents do not dispute that Petitioner was previously granted TPS, but their argument for his detention necessarily requires that Petitioner no longer has active TPS, else the statutory bar in 8 U.S.C. § 1254a(d)(4) would apply. That said, Respondents have not provided evidence that Petitioner's TPS has been properly withdrawn nor otherwise indicated that this evidence even exists. This is particularly egregious given that Federal Respondents were put on notice, not just by this Court's Show Cause Order, but by Petitioner as well, that the specific factual allegations in this case may be corroborated or disproved by documents in the possession of the Federal Respondents. See Petition at 1 n.1. As recognized by the Ninth Circuit, when a party has relevant evidence within its control and fails to produce said evidence, that failure gives rise to an adverse inference that the evidence is unfavorable to the party. See Akiona v. United

---

[3] This is supported by the Form I-213 submitted by Respondents. See ECF No. 8-1.

[4] This is supported by the numerous Employment Authorization Cards, dating back to 2005, submitted by Petitioner. See ECF No. 9-1.

[5] Respondents do not dispute that Petitioner has TPS, nor the year Petitioner received TPS. While Petitioner was unable to produce direct evidence of his TPS status, the Employment Authorization Cards provided by Petitioner necessarily prove he was granted TPS at some point prior to 2005. See id.; 8 C.F.R. § 274a.12(a)(12).

States, 938 F.2d 158, 160–61 (9th Cir.1991). Accordingly, the government's failure to produce evidence that could have supported their case if produced, *i.e.*, evidence confirming whether or not Petitioner's TPS has been properly withdrawn, leads this Court to draw an adverse inference that such evidence would have been unfavorable to the government's position if disclosed to the Court.

Respondents' assertion that USCIS closed an application for TPS by Petitioner in 2024, alone, is not sufficient to show Petitioner's TPS has been withdrawn. Under 8 C.F.R. § 244.14, written notice of withdrawal and personal service, or more in certain contexts, is necessary when USCIS exercises its withdrawal authority. See 8 C.F.R. §§ 244.14(b)(1), (b)(3). Because Federal Respondents have failed to produce any evidence of this notice and service, despite necessarily possessing this evidence if it exists, and because Petitioner has provided evidence that indicates he was indeed granted TPS, the Court finds the facts and evidence indicate Petitioner's grant of TPS remains intact.

The Court further admonishes counsel for Respondents for misstating Petitioner's recent criminal history. While Respondents assert that Petitioner has a 2021 conviction for domestic violence and an additional domestic violence charge pending, see Opposition at 2, court records clearly indicate (1) Petitioner's 2021 conviction, in Case No. C1247288 before the Las Vegas Municipal Court, was for disorderly conduct, not domestic violence, and (2) in Case No. 26-PC-021733 in the Clark County Justice Court, the county declined to prosecute *any* charges resulting from Petitioner's most recent arrest within a single day of his arrest occurring. See ECF No. 9 at 4 (Petitioner's Traverse).

Based on the evidence presented, the Court finds Petitioner has been granted TPS, TPS for El Salvador remains valid until, at least, September 9, 2026, and Respondents have not made any showing that such status was properly withdrawn. Thus, the Court finds Petitioner's detention is statutorily barred under 8 U.S.C. § 1254a(d)(4).

### IV.   Scope of Relief

Based on the record before it, the Court finds that Petitioner is subject to erroneous, prolonged detention that was illegal under statute from its inception. Thus, the Court finds

immediate relief is the sole appropriate remedy, as Respondents are statutorily barred from detaining Mr. Aguirre on the basis of his immigration status. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); Preiser v. Rodriguez, 411 U.S. 475, 498 (1973) (stating that immediate or speedier release from incarceration is "the heart of habeas corpus).

## V.    CONCLUSION

Therefore, **IT IS HEREBY ORDERED** Petitioner's Amended Petition (ECF No. 6) is **GRANTED**. Defendants must **IMMEDIATELY RELEASE** Petitioner from detention on his own recognizance, **but by no later** than **10:00 A.M. on May 8, 2026**. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **May 11, 2026**, confirming Respondents' compliance with this Order, including their compliance with this Court's directives concerning conditions of release,[6] and Petitioner's release from detention.

**IT IS FURTHER ORDERED** Respondents inform Petitioner's counsel of the date, time, and location of Petitioner's release at least two hours in advance of said release.

**IT IS FURTHER ORDERED** Respondents are **ENJOINED** from re-arresting or re-detaining Petitioner on the basis of his immigration status while he maintains Temporary Protected Status.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen

---

[6] The Court has received reports of Respondents imposing release conditions that violate this Court's orders, which necessitates this Court impose a strict review of government compliance in this matter. See, e.g., Solis v. Noem, No. 2:26-cv-00053-RFB-EJY, 2026 WL 776981 (D. Nev. Mar. 19, 2026) (enforcing this Court's prior order releasing a petitioner on his own recognizance, after ICE and DHS "unilaterally imposed release conditions that constitute a significant constraint on Petitioner's liberty, including 'enrollment and successful participation in an Alternatives to Detention (ATD) program as designated by the U.S.'; 24/7 electronic surveillance with an ankle monitor, a curfew, and appearances at ICE offices every two weeks") (internal citation omitted),

this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** May 6, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**